**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

```
MONTIE CORR,                      )
                                  )
                 Plaintiff,       )    CIVIL ACTION
                                  )
v.                                )    No.  08-1285-MLB
                                  )
                                  )
TEREX USA, LLC,                   )
                                  )
                 Defendant.       )
                                  )
```

**MEMORANDUM AND ORDER**

This case comes before the court on Terex's motion for summary judgment (Doc. 159) and plaintiff's motion for partial summary judgment (Doc. 164). The motions have been fully briefed and are ripe for decision. (Docs. 160, 168, 176, 179, 182). Terex's motion is denied and plaintiff's motion is granted in part and denied in part for the reasons herein.

**I.   Facts and Procedural History**

Plaintiff Montie Corr was employed by Cornejo & Sons during 2006 as a construction worker. On November 22, 2006, Corr was working on paving a road in Butler County, Kansas. Cornejo rented a MS-3 Mat Smoothness Machine (MS-3) to complete the construction project. An MS-3 is attached to an asphalt paving machine for propulsion during paving. The MS-3 has six total wheels and a motor with separate controls to drive its hydraulic systems, a remixing auger, and a conveyer. The MS-3 has a front-end hopper into which a dump truck pour hot-mix asphalt. The MS-3 then remixes the asphalt and transfers it into the asphalt paver's hopper. The MS-3 has operator's controls

on the left side of the machine and located above and slightly in front of the left center caster wheel. The MS-3 controls are monitored and adjusted by the MS-3 operator during paving. The operator walks alongside the MS-3 during operation.

Corr was operating the MS-3 on November 22. Corr contends that there was an asphalt leak that he was investigating while the machine was running. Corr was injured when his foot was caught under the MS-3's center caster wheel. Corr suffered significant injuries to his leg and foot. After Corr's accident, the MS-3 resumed operations with no evidence of malfunctioning.

Corr hired Vaughn Adams, a safety systems and human factors engineer, to testify as an expert. Adams will testify that the MS-3 is defectively designed because there is a reasonable foreseeable injury event when operating the MS-3.[1] Adams opined that an operator can slip or fall during inspection of the MS-3 which would cause a run-over by the left center frame caster wheel. Adams testified that the design of the MS-3 warranted the following:

> 1) an operator stand or platform to allow inspection and operation from a fixed station and away from the rotating center caster wheel; or
>
> (2) guarding of the center wheels compliant with SAE 198 guarding personal protection standard with a fixed guard that will guard or shield the MS-3 operator's foot and lower leg during their operation and control of the machine's function.
>
> Alternatively, if neither an operator platform or guarding are utilized, a relocation of the center frame wheel to be inboard of the machine framework would be warranted. (See other manufacturer designs: Caterpillar and Road Tec.)

---

[1] The court denied Terex's motion to strike Adams' opinions (Doc. 183).

-2-

> Additionally, [Terex] could have placed the MS-3
> controls on a remote operator panel to be utilized by the
> paving operator. This remote terminal option was
> available on the MS-4, and would have eliminated the need
> for a MS-3 ground operator. Additional placard warnings
> on the sides of the machine thereby should have warned
> all personnel to stay clear of the machine sides.

(Doc. 171, exh. 2 at 20-21).

Adams testified during the <u>Daubert</u> hearing and during his deposition that if the MS-3 was equipped with a remote station Corr's accident would not have occurred. Adams further testified that if the MS-3 had been equipped with a guard on the wheel Corr's accident would not have been as serious.

Terex moves for summary judgment on the basis that Corr has failed to establish that the MS-3 was defectively designed and that the defect caused Corr's accident. Corr moves for partial summary judgment on various defenses asserted by Terex.

## II. Summary Judgment Standards

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim. <u>Adamson v. Multi Community Diversified Svcs., Inc.</u>, 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must

-3-

ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**III. Analysis**

**A. Terex's Motion for Summary Judgment (Doc. 159)**

Under Kansas law, product liability claims are governed by the Kansas Products Liability Act ("KPLA"), codified at K.S.A. § 60-3301 et seq. The underlying purpose of the KPLA is "to consolidate all product liability actions, regardless of theory, into one theory of legal liability." Samarah v. Danek Med., Inc., 70 F. Supp.2d 1196, 1202 (D. Kan. 1999) (internal quotations omitted). Under K.S.A. § 60-3302(c), all legal theories of recovery, e.g., negligence, strict liability, and failure to warn, are to be merged into one legal theory called a "product liability claim." Patton v Hutchinson Wil-Rich Mfg. Co., 253 Kan. 741, 756 (1993). Thus, the KPLA's provisions "apply to actions based on strict liability in tort as well as negligence, breach of express or implied warranty, and breach of or failure to discharge a duty to warn or instruct." Savina v. Sterling Drug, Inc., 247 Kan. 105, 126 (1990).

To succeed on his defective product claim, Corr must prove: "(1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left defendant's control." Samarah, 70 F. Supp.2d at 1202. With respect to the second element, Kansas courts require "that

-4-

a product be both defective and unreasonably dangerous." Id. Because the court has determined that Adams is qualified to testify as an expert in this case, Corr has satisfied the last two elements.[2] Further, Adams testified that certain modifications would have eliminated the injury and other modifications would have lessened the injury. Therefore, Corr has met his burden with respect to the first element. Terex's motion for summary judgment is therefore denied.

**B. Corr's Motion for Partial Summary Judgment (Doc. 164)**

Corr moves for summary judgment on four affirmative defenses raised by Terex in the pretrial order.

**1. Unreasonable Use**

First, Corr asserts that the defense of unreasonable use is not separate from a comparative fault analysis. Corr is correct. "[P]laintiff's fault must be compared with that of defendant whether it be characterized as contributory negligence, assumption of risk, product misuse, or unreasonable use. These defenses all depend on the reasonableness of plaintiff's conduct, a negligence concept." Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 455 (10th Cir. 1982)(citing Kennedy v. City of Sawyer, 228 Kan. 439, 461 (1980). Terex may raise the issue of unreasonable use for the purpose of comparing fault.

**2. Regulatory Compliance**

Terex asserts that its regulatory compliance defense is based on the requirement that Terex place warning signs on its product. Terex asserts that the MS-3 included a warning that informed the operator to shut off the MS-3 before performing any maintenance.

---

[2] A discussion of Adams' opinions is contained in this court's order dated March 17, 2011. (Doc. 183).

Terex contends that Corr's failure to heed the warning resulted in the accident. Corr, however, has not stated a claim based on a failure to warn. The statue allowing a regulatory compliance defense reads as follows:

> (a) When the injury-causing aspect of the product was, at the time of manufacture, in compliance with legislative regulatory standards or administrative regulatory safety standards relating to design or performance, the product shall be deemed not defective by reason of design or performance, or, **if the standard addressed warnings or instructions, the product shall be deemed not defective by reason of warnings or instructions**, unless the claimant proves by a preponderance of the evidence that a reasonably prudent product seller could and would have taken additional precautions.

K.S.A. 60-3304(a)(emphasis supplied).

Because Corr is not asserting a failure to warn claim, the defense is not applicable in this case because the regulation followed by Terex applied to warnings and not with respect to design or performance. Terex, however, will be able to introduce evidence of the warning affixed to the MS-3 for the purpose of comparing fault.

### 3. Sophisticated User/Learned Intermediary

Terex asserts that the sophisticated user/learned intermediary doctrine is applicable in this case. It is not, for two reasons. First, Corr has not raised a claim of failure to warn. (Doc. 152). Second, the doctrine has only been utilized by Kansas courts in products cases concerning prescriptions and medical instruments. See Samarah, 70 F. Supp.2d at 1204 (citing Humes v. Clinton, 246 Kan. 590, 600 (1990)).

Corr's motion is therefore granted.

### 4. Comparative Fault - Medical Condition

Finally, Corr seeks to exclude evidence concerning his seizure condition and prescription medication. This issue is more properly presented in a motion in limine and not a true motion for summary judgment on a dispositive issue. Therefore, the court declines to rule on the admissibility of the evidence at this time. Corr may raise this issue again prior to trial.

**IV. Conclusion**

Terex's motion is denied (Doc. 159) and plaintiff's motion is granted in part and denied in part (Doc. 164). The clerk is directed to set this case for trial.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this __22nd__ day of March 2011, at Wichita, Kansas.

> s/ Monti Belot
> Monti L. Belot
> UNITED STATES DISTRICT JUDGE